# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) Case No. **24mj4682** |
| 2009 white Mercedes, CA license plate 8HCC139 | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2113 and 18 USC 9 | Bank Robbery and Brandishing a Firearm in Relation to a Crime of Violence |

The application is based on these facts:

See Affidavit in Support of Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Justine Moquino, FBI
*Printed name and title*

Attested to by the application in accordance with the requirements of Fed. R. Crim P. 4.1 by telephone.

Date:   12/13/24

_____
*Judge's signature*

City and state:  San Diego, California

Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Justine Moquino, Special Agent, Federal Bureau of Investigation (FBI), being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I make this affidavit in support of applications to search the following vehicle:

a. 2009 white Mercedes bearing California license plate 8HCC139, registered to Maria Santos Salaiza ("**Target Vehicle**")

2.     As described further in Attachments, this request is made to search the for items to be seized described in Attachment B that constitute evidence, fruits, and instrumentalities of violations of federal law, including Title 18, United States Code, Section 2113(a) (Bank Robbery), Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm), and Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence) (collectively the "**Target Offenses**,"), as further described in Attachment B.

3.     Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that evidence of the **Target Offenses** is contained within the **Target Vehicle**. There is also probable cause to believe that a search of the aforementioned **Target Vehicle** as described in the corresponding Attachment A will produce evidence of the aforementioned crime, as described in the corresponding Attachment B..

4.     The following set forth in this affidavit is based on my own investigation, reports written by other law enforcement agents, and consultation with other law enforcement agents and officers experienced in investigating violent crimes, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and

1

experience. Since this affidavit is submitted for a limited purpose of obtaining a search warrant for **Target Vehicle**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause. I set forth only facts necessary to establish foundation for the requested warrant. Dates and times are approximate and are noted in Pacific Standard Time. Agent interpretation of information from the investigation is set forth in brackets.

## EXPERIENCE AND TRAINING

5.    I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since April 2022.  As a federal agent, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.  I am currently assigned to the Violent Crimes Task Force of the San Diego Field Office where I investigate various crimes that include, but not limited to, bank robberies, commercial robbery chains, kidnappings, extortions, fugitives, assaults on federal officers, murders of United States citizens in foreign countries, and serial murders.

6.    I have received eighteen and a half weeks of training at the FBI Academy in Quantico, Virginia.  During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative properties.  The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing and a variety of other subjects.  I have received training in interviewing and interrogation techniques, arrest procedures, surveillance, the execution of searches and seizures, and various criminal laws and procedures.  I am authorized to investigate violation of the law of the United States, and I am a law

enforcement officer with the authority to execute warrants issued under the authority of the United States.

7.    Prior to my employment with the FBI, I was a commissioned officer in the United States Marine Corps and obtained the rank of Captain. I still maintain this rank in the Marine Corps Reserve.

8.    I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

9.    My knowledge of the matters contained in this affidavit is based upon my personal knowledge, review of financial records, digital device media, and information provided to me by other law enforcement officers/agents. All dates and times unless noted otherwise are in Pacific Standard Time (PST).

**FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE**

### *Background of Case*

10.    On December 10, 2024, law enforcement was notified of a bank robbery. They reported to the scene, interviewed witnesses, reviewed surveillance video, and learned that, on December 10, 2024, at approximately 10:02 a.m., a black male entered the Wells Fargo Bank, located at 475 Fletcher Parkway, El Cajon, California 92020 (hereinafter "Wells Fargo"). The black male was wearing a dark-colored Nike jacket, a blue collared shirt, black hat, jeans, glasses, and had a firearm (hereinafter "the robber"). The following still images show the robber as he entered the bank and approached the Victim Teller:




3

11.    According to surveillance from the bank, the robber entered the bank from the north side of the building.  The bank did not have many customers inside at the time the robber entered. The robber approached the Victim Teller, and the Victim Teller greeted him by saying "good morning." The robber immediately walked to Victim Teller and brandished a firearm, as shown below:



12.    The robber held the firearm with his right hand (as shown above) and with his left, produced a bag that he utilized to cover the firearm while he pointed it at Victim Teller (as shown below):



4

13.    According to the Victim Teller, the robber whispered, "you know what to do" and demanded large bills from the Victim Teller.  The Victim Teller noticed his large bills were not of good quality, so he gave the robber primarily twenty-dollar bills with smaller denominations.  The robber then stated, "Where are the hundreds?" in a raised voice while pointing the firearm at the Victim Teller.  The Victim Teller panicked and feared for his life. The Victim Teller had never had a firearm pointed at his chest. The Victim Teller believed the Victim Teller was going to die.  The Victim Teller felt desperate to satisfy the robber and offered to give him a roll of coins. Thereafter, the Victim Teller handed a total of approximately $9,081.00 to the robber.  The robber took the money, placed it in his bag, and immediately departed the bank on foot without speaking to anyone else.

14.    Law enforcement arrived on scene after the robbery and reviewed the surveillance video from the Stallion Arena Fitness, near Wells Fargo, located at 450 Fletcher Parkway, Unit 109, El Cajon, CA. According to the video, a black Cadillac entered the parking lot from Pioneer Way.  The driver of the black Cadillac backed into a parking space in front of Stallion Arena Fitness gym. From the surveillance video, El Cajon Police Officers obtained the license plate of the black Cadillac—California 7POJ912—while the driver was backing into the parking space.  The driver, who was the robber later identified from the Royalty Jewelry surveillance video (as discussed below), exited the black Cadillac and went to the trunk of black Cadillac to retrieve a bag that resembled the bag used by the robber (as shown in the photos above) to cover the firearm and put money into at the Wells Fargo.  The robber then goes back into the black Cadillac on the driver side and exits again with a jacket.  The robber left the black Cadillac and walked towards the Wells Fargo.

15.    According to surveillance video from Royalty Jewelry located at 450 Fletcher Parkway, Suite 115, El Cajon, California, law enforcement observed the robber running from the Wells Fargo bank, crossing the street, and entering the parking lot of Stallion Arena Fitness, where the robber parked the black Cadillac. The robber entered black Cadillac on the driver side, and left the parking lot heading toward Pioneer Way.  As viewed on this surveillance video, the robber is fleeing the bank while wearing a dark-colored jacket and jeans, which matched the description from the bank surveillance video.

### *Identification of the Robber, Subject Residence, and Black Cadillac*

16.    According to law enforcement databases, the black Cadillac was currently registered to 656 Felicita Avenue in Spring Valley, California.  According to records checks, the registered owner of the black Cadillac  was Rosario Elizabeth Santos, aka Rosario Elizabeth Santo Salaiza. According to records from the California Department of Motor Vehicles (DMV), law enforcement discovered that MAURICE V. CARTER listed the same residence as the owner of the black Cadillac.  Law enforcement obtained a photograph of CARTER from the DMV records and compared it to the surveillance video of the robber at Wells Fargo:

California DMV Photo        Wells Fargo Video        Wells Fargo Video





6

17.    On December 10, 2024, law enforcement conducted surveillance at the **Subject Residence**, located at 656 Felicita Ave, Spring Valley, California. At approximately 2:26 p.m., law enforcement observed the black Cadillac driving on Felicita Avenue. Then it pulled into the driveway of the **Subject Residence**. Law enforcement confirmed the California license plate of the black Cadillac matched that of vehicle observed before and after the robbery at Wells Fargo. Law enforcement observed a black male matching the description of the robber— wearing ripped jeans and the blue collared shirt shown in the surveillance video— exit the driver's side door of the black Cadillac.  Law enforcement compared the black male to the photograph of CARTER and confirmed it was the same person exiting the black Cadillac.  Law enforcement watched CARTER walk around the black Cadillac towards the passenger side.

18.    Law enforcement observed CARTER retrieve what appeared to be a white bag from the passenger side of the black Cadillac.  CARTER carried the white bag with both hands up the driveway towards **Subject Residence**. CARTER entered the **Subject Residence** with the white bag. A couple minutes later CARTER exited the **Subject Residence** and returned to the black Cadillac without the white bag in his hands.  CARTER then drove away from the **Subject Residence** in the black Cadillac to a nearby Mexican food restaurant located in the vicinity of 566 Paraiso Avenue, Spring Valley, CA 91977.

19.    Law enforcement followed CARTER as he drove the black Cadillac **and** observed him exit it and enter the Mexican restaurant with another white shopping bag.  CARTER then left the restaurant with the white shopping bag and returned to the **Subject Residence**.  CARTER exited the black Cadillac and entered the **Subject Residence** with the white shopping bag. A couple minutes later, CARTER returned the black Cadillac without the white shopping bag and drove away from **Subject Residence**.

7

20.     After CARTER left the **Subject Residence** in the black Cadillac, law enforcement attempted to surveil him. However, law enforcement was concerned CARTER may suspect being followed and therefore ceased surveillance.

21.     Law enforcement continued its presence at the **Subject Residence** should CARTER return again in the black Cadillac. After approximately 6 p.m. on December 10, 2024, law enforcement observed the black Cadillac approaching the **Subject Residence** on Felicita Avenue. Law enforcement observed CARTER park the black Cadillac next to **Target Vehicle** and open the trunks of both cars. At this time, law enforcement made contact with CARTER outside of the **Subject Residence** near the black Cadillac and detained him. Law enforcement found three cell phones during CARTER's detention. At this time, CARTER was wearing different clothing than the clothing from the robbery, but was wearing similar dark Nike tennis shoes as shown below:

From Detention at Residence                 From Wells Fargo Robbery

    

22.     At the time of his detention outside of the **Subject Residence** on December 10, 2024, law enforcement took a photograph of CARTER, as shown below (and as compared to the robber at Wells Fargo):

Photo When Detained          Wells Fargo Video          Wells Fargo Video

        

23.    At the time of CARTER's detention, investigators observed black rimmed glasses matching the description of those used in the robbery were sitting in the open trunk of the **Target Vehicle** that was being accessed by CARTER prior to his being detained by law enforcement (see photo below).  The vehicle was secured and seized by investigators and towed to El Cajon Police Department's secure vehicle storage, so investigators can seek a search warrant.



24.    According to criminal history checks, CARTER has a lengthy criminal history, which includes convictions for: possession/manufacture/sale of a dangerous weapon (misdemeanor) (1989), carrying a loaded firearm in a public place (misdemeanor) (1990), domestic violence/battery (misdemeanor) (1992), inflict corporal injury on a spouse (misdemeanor) (1994), sex with a minor when perpetrator 21+ and victim under 16 (felony) (2000), violation of domestic court order (misdemeanor) (2000), inflict corporal injury on a spouse (misdemeanor) (2000), false statement to a peace officer (false name) (misdemeanor) (2004),

felon/addict in possession of a firearm (felony–64 months prison) (2015), grand theft money/labor/property (felony-16 months prison) (2015).  CARTER also has arrests for robbery (1993) and burglary (1993, 2014).

25.    A search warrant for the Subject Residence was signed by the Honorable Jill Burkhardt and then, executed by investigators on the evening of December 10, 2024, into the early morning of December 11, 2024.  During the search, a pair of jeans with tears in them matching those worn during the robbery were found within a bedroom inside the house and seized.  In the same room, Agents found documents bearing MAURICE CARTER's name, to include a piece of mail addressed to CARTER at Subject Residence and a receipt for a local storage unit in CARTER's name.

## CELL PHONE SEARCH WARRANT METHODOLOGY
### Procedures for Electronically Stored Information

26.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides

10

some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**GENUINE RISKS OF DESTRUCTION**

29. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of these warrants, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN ITEMS

30.    On December 10, 2024, a search warrant for the Subject Residence and black Cadillac was signed by the Honorable Jill Burkhardt. During that search, investigators seized the above mentioned jeans with tears and Nike shoes that CARTER wore during the robbery. No warrant was sought or obtained for the **Target Vehicle**.

## CONCLUSION

31.    For all the reasons described above, there is probable cause to believe that CARTER committed violation of Title 18, United States Code, Section 2113(a) (Bank Robbery), Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm), and Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence).  Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence of violations of the **Target Offenses**, as described in the corresponding Attachment B, are likely to be found in the property to be searched, the **Target Vehicle**, as described in the corresponding Attachment A.

_____
Justine Moquino
FBI Special Agent


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of December 2024.

_____
HON. JILL L. BURKHARDT
United States Magistrate Judge

12

1

## **Attachment A**

2

### ***Target Vehicle to be Searched***

3

The  search  is  to  include  the  search  of  a  2009  White  Mercedes  bearing

4

California license plate 8HCC139, registered to Maria Santos Salaiza, located at El

5

Cajon Police Department, 100 Civic Center Way, El Cajon, California 92020:

6

- 2009 White Mercedes
  - R/O: Maria Santos Salaiza

7

  - VIN: 4JGBF71E59A479867

8

  - CA License Plate: 8HCC139

9

10

 

11

12

13

14

15

16



17

18

19

20

21

22

23

24

25

26

27

13

## **Attachment B**

### *Subject Residence Items to be Seized*

The items to be seized are fruits, instrumentalities, and evidence of violations of Title 18, United States Code, Section 2113(a) (Bank Robbery), Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm), and Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence), namely:

1.    Firearms and firearm-related materials, including but not limited to handguns, ammunition, magazines, components of firearms, holsters, gun cases, gun-cleaning kits.

2.    Records, documents, and tools used for or reflecting the ownership, manufacture, or maintenance of firearms or ammunition (including reloading devices, dies, books, pamphlets, manuals, and licenses);

3.    Indicia of ownership of **Target Vehicle** and items described herein, including identification cards or documents, utility bills, telephone bills, keys, letters, mail, canceled mail envelopes, or clothing;

4.    Cell phones which may contain evidence of the Target Offenses. Within the cell phone(s), this warrant authorizes the search of electronic records, communications, and data including, but not limited to emails, text messages, photographs, audio files, videos, and location data, for the period **from December 1, 2024 to the date of this warrant:**

    a.    tending to indicate efforts to possess firearms and ammunition;

    b.    tending to indicate efforts to commit bank robbery;

    c.    tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers – that

may contain electronic evidence tending to indicate efforts to commit bank robbery and possess firearms and ammunition;

d.    tending to identify co-conspirators, criminal associates, or others involved bank robbery and possession of firearms and ammunition;

e.    tending to identify travel to or presence at locations involved in bank robbery and possession of firearms and ammunition, such as banks, or the **Target Vehicle**;

f.    tending to identify the user of, or persons with control over or access to, the cellular telephone; and,

g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

5.    Cash and currency;

6.    White bag and white shopping bag;

7.    Black bag; and,

8.    Blue collared shirt, dark-colored jacket with Nike logo, eyeglasses, and baseball cap.

All of the above constituting evidence of a violation of Title 18, United States Code, Section 2113(a) (Bank Robbery), Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm), and Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence) (collectively the Target Offenses).

15